1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT
9                 SOUTHERN DISTRICT OF CALIFORNIA
10
11 | DEMARUEA NORTH,                      Case No.:  24-CV-2041 JLS (VET)
   | CDCR #BJ-7624,
12 |                                      **ORDER:**
13 |                          Plaintiff,
   |                                      **(1) GRANTING MOTION TO
14 | vs.                                  PROCEED *IN FORMA PAUPERIS*,**
15 | SGT. SALAZAR, ADA Correctional
   | Sergeant; S. STEADMAN, Associate    **(2) DISMISSING COMPLAINT
16 | Warden; JAMES HILL, Warden,          FOR FAILING TO STATE A
   |                                      CLAIM PURSUANT TO 28 U.S.C.
17 |                          Defendants. §§ 1915(e)(2) AND 1915A(b), AND**
18
19 |                                      **(3) DENYING MOTION
20 |                                      FOR CHANGE OF JURY
   |                                      DEMAND AS MOOT**
21
22 |                                      (ECF Nos. 2, 4)
23
24       Before the Court is a civil rights Complaint filed by Plaintiff Demaruea North, a
25 prisoner at Richard J. Donovan Correctional Facility ("RJD"), who is proceeding without
26 counsel, pursuant to 42 U.S.C. § 1983.  *See* ECF No. 1 ("Compl.").  Plaintiff claims prison
27 officials at RJD violated his constitutional rights in September 2022 by failing to provide
28 him a surgical mattress.  *Id.* at 3–5.  He seeks $350,000 in general and punitive damages.
   *Id.* at 7.

Plaintiff has not paid the filing fee required by 28 U.S.C. § 1914(a) to commence a civil action, but instead has filed a Motion seeking leave to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) ("IFP Mot.," ECF No. 2). Plaintiff later filed a Motion seeking to change the demand for a jury trial contained in his Complaint. *See* ECF No. 4.

For the reasons explained, the Court **GRANTS** Plaintiff leave to proceed IFP, but **DISMISSES** his Complaint *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) because it fails to state a claim upon which relief may be granted and **DENIES** his Motion to change his jury demand as moot.

## MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' . . . the PLRA [("Prison Litigation Reform Act")] amended the IFP statute to include a carve-out for prisoners: under the current version of the IFP statute, 'if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for

---

[1] In addition to the $350 statutory fee, civil litigants filing suit are required to pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). The administrative portion does not apply to persons granted leave to proceed IFP. *Id.*

1    collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)–(2)).

2        To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of

3    all assets [they] possess[,]" as well as a "certified copy of the[ir] trust fund account

4    statement (or institutional equivalent) for . . . the 6-month period immediately preceding

5    the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113,

6    1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when

7    funds exist, collect, . . . an initial partial filing fee," which is "calculated based on 'the

8    average monthly deposits to the prisoner's account' or 'the average monthly balance in the

9    prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly

10   payments of 20 percent of the preceding month's income credited to the prisoner's

11   account.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)–(2)). Thus, while

12   prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one

13   lump sum, they nevertheless remain obligated to pay the full amount due in monthly

14   payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1)–(2);

15   *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

16       In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate

17   Statement Report, as well as a notarized certificate of funds issued by an RJD trust

18   accounting department official that attests to his trust account balance and deposits for the

19   six months prior to filing. *See* ECF No. 3; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2;

20   *King*, 398 F.3d at 1119. These documents show average monthly deposits of $15, an

21   average monthly balance of $15.32, and a $25.03 available balance in Plaintiff's account

22   at the time of filing. *See* ECF No. 3 at 1, 3.

23       Based on this accounting, the Court **GRANTS** Plaintiff's Motion to Proceed IFP and

24   assesses an initial partial filing fee of $3.06 pursuant to 28 U.S.C. § 1915(b)(1). However,

25   this initial fee need be collected only if sufficient funds are available in Plaintiff's account

26   at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no

27   event shall a prisoner be prohibited from bringing a civil action or appealing a civil or

28   criminal judgment for the reason that the prisoner has no assets and no means by which to

pay the initial partial filing fee"); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to him when payment is ordered").  Pursuant to 28 U.S.C. § 1915(b)(2), the CDCR or any agency later having custody must forward payments to the Clerk until the $350 statutory fee is paid in full.

SCREENING

## I.    Standard of Review

Because Plaintiff is a prisoner seeking damages from a governmental entity or actor and is proceeding IFP, his Complaint requires a preliminary review pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).  Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion thereof, found frivolous, malicious, failing to state a claim, or seeking damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for dismissal for prisoner claims at screening is the 'same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim.'"  *Long v. Sugai*, 91 F.4th 1331, 1336 (9th Cir. 2024) (quoting *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted)); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.  A complaint fails to state a claim if it lacks a "cognizable legal

4

theory" or "sufficient facts . . . to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled," *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## II.    Factual Allegations

After he arrived at the "EOP" Building at RJD's C-Yard on September 30, 2022,[2] and assigned to Cell #124, Plaintiff claims he asked multiple unknown correctional officers to provide him an "ADA medical mattress" due to a recent spinal surgery, but they all refused.  *See* Compl. at 3, 9.[3]  Two days later, on October 2, 2022, when Defendant Salazar,

---

[2] "The Enhanced Outpatient Program (EOP) is for inmates with 'acute onset or significant decompensation of a serious mental disorder.' [. . .]  EOP programs are located in designated living units at 'hub institution[s].'"  *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1075 (E.D. Cal. 2014).

[3] Because Plaintiff attaches CDCR inmate appeals and their institutional responses as exhibits to his Complaint and incorporates them by reference, the Court will consider these documents when screening his Complaint.  *See* ECF No. 1 at 8–16.  "Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference," to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted.  *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs*., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  While a motion to dismiss under Rule 12(b)(6) is normally confined to the allegations stated in the complaint, a court "may also 'consider [1] materials that are submitted with and attached to the complaint'; '[2] judicial notice of matters of public record'; and '[3] unattached evidence on which the complaint necessarily relies if: [a] the complaint refers to the document; [b] the document is central to the plaintiff's claim; and [c] no party questions the authenticity of the document.'"  *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill*., 983 F.3d 435, 439 (9th Cir. 2020) (quoting *United States v. Corinthian Colls*., 655 F.3d 984, 998–99 (9th Cir. 2011)).

the "ADA Sergeant," entered the building, Plaintiff repeated his mattress request, this time in view of Salazar's "BWC" (body-worn camera). *Id.* at 3. Nevertheless, Salazar "did not act" and as a result, Plaintiff claims he was left without a mattress until October 5, 2022, when he formally asserted he was "ADA mobility-impaired[,] had spinal surgery," and was still without a mattress via a CDCR 602 Inmate/Parolee Appeal. *Id.* at 4, 9–10. Plaintiff alleges the failure to provide him an ADA or surgical mattress during these five days resulted in "more injury to [his] spine," mental anguish, and a violation of his rights to due process, equal protection, and to be free from cruel and unusual punishment. *Id.* at 3–5.[4]

## III.  Discussion

As currently pled, the Court finds Plaintiff's Complaint must be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A because it fails to state a claim upon which § 1983 relief can be granted. *Watison,* 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121; *Shroyer*, 622 F.3d at 1041.

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

---

[4] Plaintiff also alleges he was denied access to the law library in a paragraph heading and contends without more that all Defendants are "running a 'mafia style' prison system contaminated [by] corruption/lawlessness" in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* Compl. at 5. However, because Plaintiff has no constitutional right to a law library, includes no factual allegations to plausibly suggest any actual injury with respect to right to access to the court, and only asserts civil rights violations related to the conditions of his confinement, the Court summarily dismisses these conclusory assertions. *See Iqbal*, 556 U.S. at 678; *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that because inmates lack "an abstract, freestanding right to a law library or legal assistance, and inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense"); *Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997) ("Civil rights violations . . . do not fall within the statutory definition of 'racketeering activity.'") (quoting 18 U.S.C. § 1961(1)).

Here, Plaintiff alleges Defendants Salazar, Steadman, and Hill are all prison officials employed at RJD, and in both their individual and official capacities violated his civil rights. *See* Compl. at 2. "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Therefore, in order to determine whether Plaintiff has pleaded a plausible claim for relief, the Court need next determine whether the factual allegations in his Complaint are sufficient to show "each Government-official defendant, through the official's own individual actions, has violated the Constitution," and thus, may be held "liable for the misconduct alleged." *Iqbal*, 556 U.S. at 676, 678.

### A.   *Supervisorial Liability*

As an initial matter, the Court finds Plaintiff's Complaint fails to state any plausible claim for relief against either Warden Hill or Associate Warden Steadman. "Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Thus, in order to state a viable section 1983 claim, Plaintiff's allegations "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976)). His Complaint must include facts sufficient to plausibly show each defendant "[performed] an affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act which he is legally required to do that cause[d] the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

While Plaintiff identifies both Hill and Steadman as RJD's Warden and Associate Warden, respectively, he seeks to sue them both in their "supervisory capacity" and as a "hiring" and "reviewing authority" with respect to the CDCR 602 Inmate Parolee Appeal he filed regarding the lack of a suitable mattress. *See* Compl. at 2, 5. Plaintiff includes no further factual content to show how Hill or Steadman's acts or omissions violated the Constitution. *Leer*, 844 F.2d at 633. "[V]icarious liability is inapplicable to . . . § 1983

suits, [therefore] Plaintiff must plead that each Governmental-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194.

Supervisory officials, like Hill and Steadman, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. Instead, "[a] supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted). "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (citing *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011)); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them").

Plaintiff's Complaint fails to allege that either Hill or Steadman were personally involved in or responsible for any decision related to his mattress accommodations in Cell #124 from September 30 through October 2, 2022, that they set in motion any action to deprive him of a suitable mattress during that time, or that they refused to intervene in any wrongful conduct of a subordinate knowing it would inflict constitutional injury. *Iqbal*, 556 U.S. at 678; *Rodriguez*, 891 F.3d at 798; *Crowley*, 634 F.3d at 977. Therefore, his claims against both Hill and Steadman must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Watison,* 668 F.3d at 1112*; Wilhelm,* 680 F.3d at 1121.

/ / /

**B.    Due Process**

Second, to the extent Plaintiff implies, but does not clearly allege, that either Warden Hill or Associate Warden Steadman denied his right to due process by either denying or sustaining the October 5, 2022 CDCR 602 Parolee Appeal he filed complaining about his lack of a mattress, *see* Compl. at 5, 11–13, he also he fails to state a claim upon which § 1983 relief can be granted, *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

The Due Process Clause protects plaintiffs against the deprivation of liberty without due process under the law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). However, "[t]here is no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (citations omitted). Further, allegations that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, do not amount to a due process violation under § 1983. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[B]ecause inmates have no constitutional right to a prison grievance system, the actions of the prison officials in reviewing [an inmate's] internal appeal cannot create liability under § 1983.") (citing *Mann*, 855 F.2d at 640); *see also Evans v. Skolnik*, 637 F. App'x 285, 288 (9th Cir. 2015).

Accordingly, to the extent Plaintiff suggests either Defendant Hill or Steadman deprived him of a liberty interest without due process in the context of his administrative grievance review or responses, his claims are also subject to *sua sponte* dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

**C.    Equal Protection**

Third, Plaintiff claims "Defendants and all of them" have been "discriminating on black prisoners civil rights." *See* Compl. at 5. While the Court liberally construes this allegation to form the basis of Plaintiff's asserted equal protection violation involving the denial of his mattress, *see id.* at 3, 5, his Complaint nevertheless fails to include any further "factual enhancement" sufficient to support a plausible claim for relief, *see Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). To plead a viable equal protection claim, Plaintiff must allege facts sufficient to show that each Defendant he seeks to hold liable intentionally discriminated against him based on his membership in a protected class. *Hartmann*, 707 F.3d at 1123. Purposeful discrimination requires more than "intent as volition or intent as awareness of consequences." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279, 99 (1979). Instead, "[i]ntentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original) (citing *Pers. Adm'r of Massachusetts*, 442 U.S. at 279)); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin" as examples of characteristics protected by the Equal Protection Clause).

Here, Plaintiff claims broadly that Defendants as a group have been "discriminating on black prisoners['] civil rights," *see* Compl. at 5, but he includes no further facts to plausibly suggest any of the named Defendants intentionally took discriminatory action against him, i.e., denied him a surgical mattress, *because* of his race, *see Maynard*, 37 F.3d at 1404; *Hartmann*, 707 F.3d at 1123. Nor does Plaintiff allege any disability he suffers places him in a protected class, or that he was discriminated against because of any disability. *See Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) ("For the purposes of equal protection analysis, the disabled do not constitute a suspect class."); *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003) ("To establish a § 1983 equal protection violation, the plaintiffs must show that the defendants, acting under color of state law, discriminated against them as members of an identifiable class and that the discrimination was intentional.").

Without these critical allegations, Plaintiff's Complaint also fails to state a plausible equal protection claim. *See Iqbal*, 556 U.S. at 683; *Mitchell v. Las Vegas Metro. Police Dep't.*, No. 2:18-cv-00646-RFB-EJY, 2021 WL 808735, at *5 (D. Nev. Mar. 3, 2021)

(finding plaintiff's identification as an "African American" and a "[B]lack man" insufficient by itself to suggest defendants "acted with an intent or purpose to discriminate" against him based on race); *Hess v. Centurion Healthcare*, No. CV-22-01864-PHX-SPL (MTM), 2024 WL 4329673, at *12 (D. Ariz. Sept. 12, 2024) (dismissing prisoner's equal protection claims of having been denied a "CPAP, TENS machine or eggcrate mattress topper" based on his failure to show he was a member of a protected class or that any discrimination was based on disability).

### D.    Cruel and Unusual Punishment

Finally, Plaintiff claims Sgt. Salazar's failure to ensure he was provided a surgical or "ADA mattress" amounted to "cruel and unusual punishment." *See* Compl. at 3.[5]

To state a cruel and unusual punishment claim, Plaintiff must allege facts sufficient

_____

[5] While Plaintiff references his need for both a "surgical" and/or "ADA mattress," *see* Compl. at 3, he does not allege any freestanding violation of the Americans with Disabilities Act, 42 U.S.C. § 12132. Nevertheless, courts have held that there is no basis for an ADA claim when prisoners are not provided with a specific mattress or pillow. *See Muhammad v. Cal. Dep't of Corr. and Rehab.*, No. 2:23-cv-00756-JDP (PC), 2024 WL 2274839, at *2 (E.D. Cal. May 20, 2024) (finding denial of specific mattress does not violate the ADA); *Millare v. Cal. Dep't of Corr. and Rehab.*, No. 2:22-cv-1862 KJM KJN P, 2023 WL 2760908, *4 (E.D. Cal. Apr. 3, 2023) (finding the "alleged confiscation of plaintiff's DME cervical pillow relate[d] to medical care and [wa]s not related to discrimination against plaintiff because of his disability"); *Thomas v. Ogbehi*, No. 1:15-cv-01059-LJO-BAM (PC), 2018 WL 3198063 (E.D. Cal. June 27, 2018) ("Plaintiff's claims arise out of the denial of his requests for medical devices and appliances, and such allegations do not provide a basis upon which to impose liability under the ADA or RA."). This is because the ADA prohibits discrimination because of disability, not inadequate treatment for disability or a failure to attend to the medical needs of a disabled prisoner. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (The ADA is "not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.").

Further, as is true for his equal protection claims, Plaintiff has also not alleged any facts to plausibly show he was subjected to intentional discrimination or excluded from participation in any program or activity due to disability. *See Iqbal*, 556 U.S. at 678; *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) ("To state a claim under [the ADA, Plaintiff] must allege: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." (internal quotation marks and citation omitted)), *as amended on denial of reh'g en banc* (Oct. 11, 2001); *see also Muhammad,* 2024 WL 2274839, at *2 (dismissing claims that CDCR violated the ADA by failing to provide prisoner with "a second mattress to address post-COVID-19 chronic fatigue and joint pain" pursuant to 28 U.S.C. § 1915A).

1   to satisfy two requirements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Iqbal*, 556 U.S.

2   at 678. First, he must allege his deprivation was "objectively [and] 'sufficiently serious.'"

3   *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also*

4   *Peralta v. Dillard*, 744 F.3d 1076, 1091 (9th Cir. 2014). Because the Eighth Amendment

5   "does not mandate comfortable prisons," conditions there are not considered objectively

6   serious unless they amount to "unquestioned and serious deprivations of basic human

7   needs," or of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*,

8   452 U.S. 337, 347, 349 (1981); *Wilson*, 501 U.S. at 298–300.

9       Second, Plaintiff's Complaint "must contain sufficient factual matter" to

10  demonstrate that each Defendant acted with a sufficiently culpable state of mind, that of

11  "deliberate indifference." *Iqbal*, 556 U.S. at 678; *Wilson*, 501 U.S. at 303; *Peralta*, 744

12  F.3d at 1091. A prison official acts with deliberate indifference if he "knows of and

13  disregards an excessive risk to the prisoner's health and safety." *Farmer*, 511 U.S. at 837.

14  In other words, the prison official "must both be aware of facts from which the inference

15  could be drawn that a substantial risk of serious harm exists [to the prisoner], and [the

16  prison official] must also draw the inference." *Id.*

17      When determining whether a condition of confinement is objectively serious, courts

18  consider "[t]he circumstances, nature, and duration of [the] deprivation." *Johnson v. Lewis*,

19  217 F.3d 726, 731 (9th Cir. 2000); *see also Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th

20  Cir. 2005). Here, Plaintiff alleges he arrived at RJD's C-Yard EOP Building on

21  September 30, 2022, and "had recently had spinal surgery," but he was not provided a

22  mattress until October 5, 2022—three days after he confronted Sgt. Salazar. *See* Compl.

23  at 3. However, the Ninth Circuit has noted "there is no clear legal guidance 'on whether

24  mattress deprivation [requiring sleeping on a concrete floor] [amounts to] an Eighth

25  Amendment violation.'" *Jones v. Neven*, 678 F. App'x 490, 493 (9th Cir. 2017) (first

26  alteration in original) (citation omitted); *see also Chappell v. Mandeville*, 706 F.3d 1052,

27  1060 (9th Cir. 2013).

28      Many district courts in the Ninth Circuit have also concluded that temporary

deprivations of a mattress or bedding are not sufficiently serious to support an Eighth Amendment claim. *See Presti v. Telefoni*, No. 21-00405 LEK-WRP, 2021 WL 4824107, at *7 (D. Haw. Oct. 15, 2021) (holding that being deprived of bed for nine days failed to state an Eighth Amendment claim); *Hirano v. Williams*, No. EDCV 13-2371-DMG (AGR), 2017 WL 11632461, at *12 (C.D. Cal. Mar. 24, 2017) (explaining that a seven-day deprivation of a mattress generally does not rise to the level of an Eighth Amendment violation); *Gordon v. Cate*, No. 11-cv-03593-JST (PR), 2014 WL 848212, at *4 (N.D. Cal. Feb. 28, 2014) (finding that seven days with a thin, dirty, stained, and smelly mattress and no pillow was not sufficiently serious to rise to the level of an Eighth Amendment violation); *Centeno v. Wilson*, No. 1:08-CV-1435-FJM 2011 WL 836747, at *3 (E.D. Cal. Mar. 4, 2011) (finding no Eighth Amendment violation where prisoner was forced to sleep on a cold floor without a mattress, blanket, or the ability to shower for seven days), *aff'd*, 479 F. App'x 101 (9th Cir. 2012). Based on these precedents, the Court finds Plaintiff's lack of a mattress for five days does not by itself amount to an "objectively [and] 'sufficiently serious'" deprivation under the Eighth Amendment. *See Farmer*, 511 U.S. at 834 (citation omitted); *see also Faunce v. Gomez*, 163 F.3d 605, at *1 (9th Cir. 1998) (unpublished disposition) (concluding that prisoner deprived of comfortable mattress and sufficient bedding did not show he was "deprived of basic human needs").

Moreover, even if the five-day deprivation of a mattress in combination with Plaintiff's pain and discomfort from a "recent" surgery on his spine were sufficient to meet the Eighth Amendment's objective requirements, *see* Compl. at 3; *see also Wilson*, 501 U.S. at 304 (recognizing that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need" (emphasis in original)), he nevertheless fails to allege facts sufficient to show that Sgt. Salazar *knew* he had recently had spinal surgery or had been authorized for any particular accommodation to address his serious medical needs when Plaintiff alleges to

have first requested one from him directly on October 2, 2022,[6] *see Farmer*, 511 U.S. at 844 ("[P]rison officials who lack[] knowledge of a risk cannot be said to have inflicted punishment."). Instead, a prison official acts with deliberate indifference only if he "knows of and disregards an excessive risk to the prisoner's health and safety." *Id*. at 837. In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [to the prisoner], and [the prison official] must also draw the inference." *Id.*

Here, while Plaintiff alleges to have alerted "multiple unknown C/Os" about his need for an "ADA surgical mattress" after his placement in Cell #124 on September 30, 2022, he claims Salazar was not specifically apprised of this need until October 2, 2022. Plaintiff further acknowledges having been provided a mattress by October 5, 2022. *See* Compl. at 3. Based on these allegations alone, the Court finds Plaintiff's Complaint fails to plausibly suggest Sgt. Salazar was subjectively aware of facts "from which the inference could be drawn" that Plaintiff faced a "substantial risk of serious harm" prior to October 2, 2022, or that he also "dr[e]w the inference" Plaintiff would be injured if he failed to act sooner. *Farmer*, 511 U.S. at 837; *Iqbal*, 556 U.S. at 678; *Wilson*, 501 U.S. at 303; *Peralta*, 744 F.3d at 1091. Therefore, to the extent Plaintiff contends Salazar subjected him to cruel and unusual punishment in violation of the Eighth Amendment, his claims must also be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

/ / /

/ / /

---

[6] In fact, the Office of Grievances decision issued in response to Plaintiff's October 5, 2022 CDCR 602 Log No. 313591 in which he "allege[d] to be ADA mobility impaired and [in] need [of] a mattress due to pain," indicated that Plaintiff "d[id] not have [] DPP [("Disability Placement Program")] verification codes" indicating any mobility impairment in his Strategic Offender Management System ("SOMS") file at the time. *See* Compl. at 11. As a result, Plaintiff was "encouraged to submit a CDCR 7362 Health Care Services Request Form to address symptoms of pain," and a CDCR 1842 Reasonable Accommodation Request for "durable medical equipment" to the ADA office for review. *Id.*

**E.      Leave to Amend**

In sum, while the Court dismisses Plaintiff's Complaint in its entirety for failing to state a claim upon which relief can be granted, it will give him the opportunity to fix his pleading deficiencies, if he can.  *See Lopez*, 203 F.3d at 1130 ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation omitted)); *Cato v. United States,* 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (citation omitted)).

## CONCLUSION

For all the reasons discussed, the Court:

1)      **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2);

2)      **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $3.06 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward the remaining balance of the total $350 filing fee owed in monthly installments to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).  ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3)      **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov;

4)      **DISMISSES** Plaintiff's Complaint (ECF No. 1) for failing to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1);

5)      **DENIES** Plaintiff's Motion for Change of Jury Demand (ECF No. 4) as **MOOT**; and

6)      **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in

which to file an amended complaint that cures all the deficiencies of pleading noted. Plaintiff's amended complaint must be complete by itself without reference to his original Complaint.  Any Defendant not named and any claim not re-alleged in his amended complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Plaintiff fails to file an amended complaint within 45 days, the Court will enter a final order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  April 15, 2025

Hon. Janis L. Sammartino
United States District Judge

24-CV-2041 JLS (VET)